# STATE EX REL. W. E. BARNES v. JOSEPH G. TAUER AND OTHERS.[1]

November 22, 1929.

No. 27,622.

[1]Reported in 227 N. W. 499.

*T. O. Streissguth,* County Attorney, for appellants (respondents below).

*Albert Hauser,* for respondent (relator below).

OLSEN, C.

Proceeding by mandamus to command the county board and auditor of Brown county to publish the financial statement of the county for the year 1928 for three successive weeks, as required by G. S. 1923 (1 Mason, 1927) § 667.

■ The statute in positive terms requires the publication of the financial statement in a newspaper published in the county for three successive weeks. G. S. 1923 (1 Mason, 1927) § 662, provides for the letting of a contract for the publication of the official proceedings of the sessions of the county board annually to the lowest bidder, at the first regular session of the board in January of each year. The board may reject any offer if in its judgment the public interest so requires, and may thereupon designate a newspaper without regard to any rejected offer. Cain v. County of Wabasha, 164 Minn. 142, 204 N. W. 916. Under these sections of the statute it is the mandatory duty of the county board to publish its official proceedings whether or not an acceptable bid be received, unless some valid excuse is shown. The only discretion conferred on the board is whether it will accept one of the bids submitted, or reject all bids and publish in some newspaper not bidding.

■ In this case the board did not in terms accept or reject the one bid presented, but by resolution ordered that the financial statement be published, in the paper submitting the bid, for one week only. In so doing the county board was in error. The statute confers no power or discretion upon the county board to say that one publication is sufficient. It is no excuse or justification for the county board to say that publishing the statement once will give the taxpayers and citizens sufficient information or as much information as if it were published three successive weeks; nor is it any

excuse or justification for the board to say that the publication for three weeks will entail large expense on the county; nor to say that by issuing a pamphlet giving the financial statement in an abbreviated form, which the public might obtain by application to the county auditor, it has substantially complied with the law. Such questions are for the legislature to consider in enacting the law, and that body has not seen fit to confer any such power or discretion on the county board.

In addition to the matters already referred to, the amended answer of the county board and auditor alleged as a defense, in substance, that, prior to the meeting of the county board at which bids were to be received and the contract let for the publication of the financial statement, all the newspapers of the county had entered into an unlawful agreement and combination, whereby it was agreed that only one bid should be submitted to the board for the publication of the financial statement; that such bid should be submitted by the relator, W. E. Barnes, the owner and publisher of the Sleepy Eye Herald-Dispatch, and should be for the maximum legal rate of 90 cents per folio for the first publication, and 45 cents per folio for each subsequent publication; that it was further agreed that if such bid was accepted Barnes should divide the compensation received so that he would receive 40 per cent thereof, and 60 per cent be divided among all the other members of the combination; that pursuant to such agreement Barnes submitted the only bid and at the rate stated, and the other newspapers refrained from submitting any bids; that the purpose of the agreement and combination was to and did destroy competition and was and is unlawful; that but for such combination lower bids would in all probability have been received; that Barnes as such publisher of the Sleepy Eye paper is a member of the combination.

It is contended therefore that the county board could not and cannot lawfully accept any bid so made or enter into any contract with any newspaper in the county for the publication of the statement, and that if any contract were made it would be unlawful and invalid.

The court sustained the demurrer to the amended answer and ordered judgment granting a peremptory writ of mandamus commanding the county board to publish the financial statement in some newspaper in Brown county for three successive weeks as provided by law.

The question presented is whether the answer states a defense. That a combination such as here alleged, if proved, is contrary to public policy and in that sense unlawful, is quite well recognized. McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. ed. 1117. Contracts which destroy competition in a situation where the muncipality or the public will suffer loss thereby are generally held invalid. 13 C. J. p. 480, states:

"The rule inhibiting interference with public interests also invalidates contracts, the tendency of which is to lessen competition or to raise the price of commodities. This rule is not restricted to contracts affecting articles of prime necessity."

While the long list of cases there recited refers generally to competition in trade or manufacture, it is difficult to distinguish contracts of the kind here in question from the contracts there referred to. In the Texas case, City of Wichita Falls v. Skeen & Smith, 18 Tex. Civ. App. 632, 45 S. W. 1037, a contract for publication, made with a newspaper which had entered into a combination or agreement similar to the one here alleged, was held void.

Mandamus is an extraordinary legal remedy but granted upon equitable principles. State ex rel. Hathorn v. U. S. Exp. Co. 95 Minn. 442, 104 N. W. 556; State ex rel. Phillips v. Neisen, 173 Minn. 350, 217 N. W. 371. Since the proper function of mandamus is to enforce obedience to law, it will be denied where it appears that the acts sought to be coerced are unauthorized or forbidden by law or tend to aid an unlawful purpose or transaction. 38 C. J. pp. 556, 557; 18 R. C. L. p. 142; Western Union Tel. Co. v. State ex rel. Hammond Elev. Co. 165 Ind. 492, 76 N. E. 100, 3 L.R.A. (N.S.) 153.

The writ issues to remedy a wrong not to promote one, and will not be granted in aid of those who do not come into court with

clean hands.   U. S. ex rel. Turner v. Fisher, 222 U. S. 204, 32 S. Ct. 37, 56 L. ed. 165.

The cases of Eagle Roller-Mill Co. v. Dillman, 67 Minn. 232, 69 N. W. 910; Disbrow v. Creamery Package Mfg. Co. 110 Minn. 237, 125 N. W. 115; and Bosshard v. County of Steele, 173 Minn. 283, 217 N. W. 354, are not mandamus cases.   The rule therein applied, that an agreement will be enforced even if it is incidentally or indirectly connected with an illegal transaction, if plaintiff will not require the aid of such illegal transaction to make out a case, has no direct application to the present case.   No contract obligation is here sought to be enforced.   The defense presented is based upon the claim that the writ will result in aiding the relator in the carrying out of an illegal agreement and combine of which he is a member, and that the county board is in a position where it cannot obey the writ without entering into a void contract and aiding in the illegal purpose.   The conclusion reached is that the amended answer states a defense and that the demurrer should have been overruled.

■ Appellants urge that there was laches in bringing and prosecuting the action.   Relator moved with promptness and obtained the judgment May 31, 1929.   What delay has since intervened was caused by the appeal taken by the board.   Relator cannot be charged therewith.   No laches is shown.

Judgment reversed.